**INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE, AGRICULTURAL AND IMPLEMENT WORKERS OF AMERICA, Plaintiff-Appellee,**

v.

**DANA CORPORATION, Defendant-Appellant.**

No. 80–3458.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 18, 1982.
Decided Jan. 10, 1983.

Richard Walinski (argued), Hayward, Cooper, Straub, Walinski & Cramer, John Czarnecki, Toledo, Ohio, Allen Siegel, Arent, Fox, Kinter, Plotkin, & Kahn, Washington, D.C., for defendant-appellant.

Gerald B. Lackey, Green, Lackey & Nusbaum, Joan Torzewski, Toledo, Ohio, John Fillion, Leonard R. Page, Detroit, Mich.,

Leonard R. Page, M. Jay Whitman (argued), Associate Gen. Counsel, for plaintiff-appellee.

Before EDWARDS, Chief Circuit Judge, LIVELY, ENGEL, KEITH, MERRITT, KENNEDY, MARTIN, JONES, CONTIE, KRUPANSKY, and WELLFORD, Circuit Judges.

BOYCE F. MARTIN, Jr., Circuit Judge.

█ The Dana Corporation appeals a temporary restraining order and subsequent preliminary injunction issued by the United States District Court for the Northern District of Ohio. These mandates effectively prevented Dana from communicating with its employees regarding a United Auto Workers organizational campaign at one of Dana's subsidiaries. Although a panel of this court issued an opinion deciding this controversy on June 4, 1982, we granted a rehearing *en banc* in this case to settle important questions affecting labor-management relations. "The effect of the granting of a hearing *en banc* shall be to vacate the previous opinion and judgment of this court, to stay the mandate and restore the case on the docket as a pending appeal." 6th Cir.R. 14(a). We now discover that the parties have signed a Settlement Agreement resolving all the issues in the case. Consequently, we are compelled to dismiss the litigation as moot for lack of a justifiable case or controversy.

Dana, a corporation organized under Ohio law, enjoyed a relatively amicable relationship with the United Auto Workers from 1956 to 1979. In 1979 a Master Agreement, effective until December, 1982, governed the relations between Dana and its twelve thousand employees represented by the UAW. In a letter supplementing the Master Agreement Dana stated its intention to remain neutral if the UAW attempted to organize workers at Dana plants not then covered by the Agreement. Dana promised not to communicate with its employees in an "anti-union manner" but reserved the right to speak in a "pro-Dana manner." The Master Agreement provided that any disputes over its terms, including the neu-

trality promise in the supplemental letter, would be resolved through binding arbitration.

The amicable relationship between the parties began to deteriorate in December, 1979 when the UAW focused its efforts on organizing employees at the Wix Corporation, a wholly-owned subsidiary of Dana in Gastonia, North Carolina. Benny Hoyle, President of Wix, openly opposed the union campaign; throughout the spring of 1980 he expressed his opposition in speeches and letters to Wix employees. Several days before the scheduled union election, the UAW obtained a temporary restraining order from the federal district court in Toledo, Ohio which prohibited Dana "from making anti-union or anti-UAW oral or written statements or other communications" to Wix employees. The court also ordered Dana to remove all anti-union materials from its bulletin boards and to submit to emergency arbitration.

Despite the court's order, Benny Hoyle continued his anti-union campaign. On the UAW's motion, the district court held Dana in contempt of the temporary restraining order, imposed a fine and ordered Dana to take specific steps to alleviate the impact of Hoyle's activities. At the end of June, 1980, the court issued a preliminary injunction pending arbitration. The preliminary injunction granted the same relief as the court's previous orders.

Dana appealed the preliminary injunction to this court. Between the date of oral arguments and the date of our first opinion in this case, several important events occurred. Dana and the UAW proceeded to arbitration as ordered by the district court. The arbitrator found that Dana breached its promise of neutrality and awarded relief incorporating most provisions of the preliminary injunction. The parties began to discuss compliance with the arbitration award and eventually signed a Settlement Agreement on June 3, 1981. Finally, on August 28, 1981, the National Labor Relations Board conducted an election at the Wix facility, which the UAW lost by a vote of 904 to 637, with 41 challenged ballots.

The UAW brought the Settlement Agreement to our attention only after we had issued our initial opinion and had granted a rehearing *en banc.*

The parties dispute the meaning and effect of the following language in the Settlement Agreement:

I. LEGAL ACTION

A. The UAW will withdraw all legal action from Federal Court in Toledo with the exception of the UAW's first Amended Complaint. The UAW will take whatever action is necessary in order to assist the Company in recovering the daily fine imposed by Judge Young. The UAW agrees that it will not change or modify their amended Complaint in Toledo, Ohio, or take any action to process that matter further. However, it is recognized that the *union has a right to take further legal action for the sole purpose of determining the legality of neutrality in the pending litigation.* Therefore, the UAW agrees and promises that it shall not seek nor take any action to impose, and will ask the court not to impose damages, fines or any other penalties against Dana for any conduct by Dana prior to the date of this Agreement *except as provided in Paragraph II of this Agreement.* It is clearly understood that the company reserves the right to defend itself in any action in which it is now or may be named a Defendant. Neither party desires to issue a press release regarding the pending litigation. However, should it become necessary to do so, the parties will review with each other the contents of such release prior to issuance.

B. The UAW agrees that once the matter of the employees' suit in North Carolina has been resolved, the UAW will immediately withdraw its Amended Complaint from Federal Court in Toledo, Ohio.

C. Dana/Wix will withdraw its court actions against the UAW in Charlotte, North Carolina.

II. All disputes involving neutrality will be submitted to the Arbitrator for resolution. The Arbitrator's decision shall be final and binding. *Neither party shall resort to legal action as a result of a dispute involving past or future conduct regarding neutrality.* The only time legal action would be appropriate would be when one party failed to abide by the Arbitrator's decision and such failure was determined by the Arbitrator.

(emphasis added).

The Union urges us to dismiss Dana's appeal as moot because this language resolves all aspects of the litigation. Furthermore, it argues, the preliminary injunction has expired because the parties have submitted to arbitration and reached a settlement governing future conflicts. In the Agreement, the UAW also promised to take no further action on its complaint in the District Court, brought originally to enforce the arbitration award. On these facts the UAW claims that the litigation before us is moot.

Dana, on the other hand, disputes the UAW's claim that the Settlement Agreement resolves all the issues in the case. Not only are there unresolved issues, Dana argues, but if the case is dismissed, the underlying legal dispute will simply recur. Dana, then, asks this court to find that the case is not moot and to resolve the underlying substantive legal dispute.

Mootness is a jurisdictional question. That is, the exercise of judicial power under Article III of the Constitution depends on the existence of a case or controversy. U.S. Const. Art. III § 2. The court may not render an advisory opinion; it is confined to "real and substantial controvers[ies] admitting of specific relief through a decree of a conclusive character...." *North Carolina v. Rice,* 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971) (citations omitted). *See also Preiser v. Newkirk,* 422 U.S. 395, 401, 95 S.Ct. 2330, 2334, 45 L.Ed.2d 272 (1975); *DeFunis v. Odegaard,* 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974). "Simply stated, a case is moot when the issues presented are no

longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack,* 395 U.S. 486, 496, 89 S.Ct. 1944, 1951, 23 L.Ed.2d 491 (1969), quoted with approval in *County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979). Jurisdiction, even if once acquired, may abate if interim relief or events resolve all issues in the litigation. *DeFunis v. Odegaard.*

We cannot reach the merits of this appeal unless we find that the parties' Settlement Agreement did not render the case moot. Generally, the settlement of a dispute between the parties does render the case moot. *Local No. 8–6, Oil, Chemical & Atomic Workers International Union v. Missouri,* 361 U.S. 363, 80 S.Ct. 391, 4 L.Ed.2d 373 (1960); *ITT Rayonier Inc. v. United States,* 651 F.2d 343 (5th Cir.1981). However, there are two major exceptions to this general rule. First, there are instances "in which one issue in a case has become moot, but the case as a whole remains alive because other issues have not become moot." *University of Texas v. Camenisch,* 451 U.S. 390, 394, 101 S.Ct. 1830, 1833, 68 L.Ed.2d 175 (1981). Second, when the situation is "capable of repetition, yet evading review," the case or controversy requirement of Article III is met. *Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed.2d 310 (1911). *See also Globe Newspaper v. Superior Court,* —— U.S. ——, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982). If either of these exceptions is demonstrated, then the litigation remains a viable controversy which the federal courts may resolve.

The primary issue before this court on appeal is whether the district court abused its discretion in granting the preliminary injunction. *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 931–932, 95 S.Ct. 2561, 2567–2568, 45 L.Ed.2d 648 (1978). However, the injunction, into which the temporary restraining order merged, expired when Dana and the UAW submitted to arbitration and signed a Settlement Agreement. The parties complied with the arbitration order and incorporated many of its provisions into their Settlement Agreement. It is, there-

fore, meaningless for us to decide whether the preliminary injunctive relief was proper. Our review of the propriety of the injunction would have no effect on the parties. *North Carolina,* 404 U.S. at 246, 92 S.Ct. at 404; *Local No. 8–6,* 361 U.S. at 371, 80 S.Ct. at 396. This issue is moot.

Our determination that the precise issue on appeal is moot does not end the inquiry for the litigation as a whole may yet contain viable issues which should not be dismissed. *University of Texas v. Camenisch.* Dana contends that this is the case here. The corporation makes arguments under both recognized exceptions to the rule that a settlement renders the case moot. First, it contends, the case is not moot because two issues remain unsettled: (1) whether Dana can proceed against the injunction bond in district court to recover its costs; and (2) what Dana's neutrality commitment means. Second, Dana argues the case is not moot because the conflict between the parties and the lawsuit which ensued are capable of repetition yet evading review. Dana asks this court to reach the merits of the substantive questions rather than remand the case to the district court for a full factual inquiry.

■ Dana points to the existence of the $5,000 injunction bond which the UAW posted with the district court as preserving a viable issue in the case. Dana relies primarily on *University of Texas v. Camenisch,* 451 U.S. 390, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981), to support its argument. *See also Liner v. Jafco, Inc.,* 375 U.S. 301, 84 S.Ct. 391, 11 L.Ed.2d 347 (1964). However, the existence of the bond alone, without a corresponding right to recover against it, is meaningless and will not prevent the dismissal of a case as moot. Dana has shown no underlying substantive issue which preserves its right to recover against the bond in district court.

In *University of Texas v. Camenisch,* the Supreme Court confronted a situation analogous to the present one. In that case, the district court issued a preliminary injunction ordering the University to hire an in-

terpreter at its expense for a deaf student. By the time the case reached the Supreme Court the validity of the injunction was moot because the student had finished school. However, the Court found that the whole case was not moot because the University retained the right to recover its losses from the injunction bond which the student had posted with the district court. The Court remanded the case for the district court to determine which party should pay for the interpreter.[1]

Unlike *Camenisch,* this is not a case where "the issue of preliminary injunctive relief [is] moot, but an issue of damages remain[s]." *Camenisch,* 451 U.S. at 394, 101 S.Ct. at 1833, *citing Ammond v. McGahn,* 532 F.2d 325 (3d Cir.1976). No issue of damages remains because Dana, despite its protestations, has foresworn all rights to recover against the bond. Dana and the UAW settled their differences after arbitration; Dana agreed not to resort to legal action to resolve disputes over past conduct. Paragraph II. In view of the terms of the agreement, Dana may not sue to recover against the bond in the district court. As an aside, we note that Dana cannot satisfy the prerequisite to recovery on the bond because it has not won a final judgment in its favor. *American Bible Society v. Blount,* 446 F.2d 588, 595 (3d Cir.1971), *cited in University of Texas v. Camenisch,* 451 U.S. at 397, 101 S.Ct. at 1834. *See also Lawrence v. St. Louis, San Francisco R. Co.,* 278 U.S. 228, 49 S.Ct. 106, 73 L.Ed. 282 (1929). In fact, every tribunal which has considered the question whether Dana breached its neutrality commitment has rendered a judgment in favor of the UAW. We conclude that the outstanding injunction bond does not preserve a viable issue in this case.

Our conclusion here does not conflict with our recent decision in *International Union, United Automobile, Aerospace and Agricultural Implement Workers of America,* *UAW and UAW Local 155 v. LaSalle Machine Tool, Inc.,* 696 F.2d 452 (1982). In *LaSalle* we held that the litigation was not moot, despite an arbitration award which terminated the preliminary injunction, because there remained an indemnification bond posted with the district court. In contrast, in the present case the parties have signed a Settlement Agreement which resolved all remaining issues in the litigation.

Dana contends that the case as a whole is not moot for a second reason. The corporation claims that the Settlement Agreement expressly reserved for this court the dispute over Dana's neutrality commitment. The agreement reserved to the UAW "a right to take further legal action for the sole purpose of determining the legality of neutrality in the pending [appeal]." The corporation reserved a corresponding right to defend itself in such an action. Dana concludes that the Settlement Agreement preserved the appeal in this court "as the vehicle for resolving the controversies regarding the neutrality issues."

Our reading of the Settlement Agreement differs from Dana's. Rather than expressing the parties' clear intent to preserve the neutrality issue, the agreement offers only an ambiguous description of the parties' rights and duties. Dana claims that the agreement did not resolve any questions concerning the preliminary injunction on appeal. This claim cannot be reconciled with the provision in the agreement which allowed Dana to recover its contempt fines. A greater confusion surrounds the Union's reserved right to pursue this appeal. The Union can litigate Dana's breach of its neutrality commitment but may not seek damages for this past conduct except as provided in a subsequent paragraph. However, that paragraph states: "Neither party shall resort to legal action as a result of a dispute involving *past* . . .

---

1. Dana invites us to follow *Camenisch* in that the Supreme Court held the injunction bond preserved the case from mootness. Dana then asks us to decide the UAW's liability on the bond, as the Supreme Court did in *Liner v.* *Jafco, Inc.,* rather than remand the case. We need not decide whether the UAW is liable to Dana, because we find the case as a whole moot.

conduct regarding neutrality." (emphasis added). The UAW's right to litigate Dana's prior breach of its neutrality commitment contradicts its promise *not to litigate* issues of Dana's past conduct regarding neutrality. We are not convinced from the Settlement Agreement that the neutrality issue was preserved for our review.

■ Even if the parties had clearly expressed their definite intention to preserve the neutrality issue, the case would still be moot. The Constitution of the United States, not private litigants, confers jurisdiction on this court to hear cases. History is replete with cases holding that "[w]ant of jurisdiction . . . may not be cured by consent of the parties." *Industrial Addition Ass'n v. Commissioner,* 323 U.S. 310, 313, 65 S.Ct. 289, 291, 89 L.Ed. 260 (1945). *See, e.g., Mills v. Brown,* 16 Pet. 525, 10 L.Ed. 1055 (1842); *Swift & Co. v. Hocking Valley R. Co.,* 243 U.S. 281, 37 S.Ct. 287, 61 L.Ed. 722 (1917); *Regional Rail Reorganization Act Cases,* 419 U.S. 102, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974). Furthermore, judicial power of the federal courts does not extend "to the adjudication of a difference of opinion." *United States v. West Virginia,* 295 U.S. 463, 474, 55 S.Ct. 789, 793, 79 L.Ed. 1546 (1935). The parties are asking this court to define the terms of Dana's neutrality commitment, a definition which they will not be bound to respect. If our definition of Dana's neutrality commitment were unsatisfactory, the parties could simply redraft their agreements. It is not for this court to draft agreements for quarreling litigants, and we decline to do so.

Dana's final argument is that the present situation is "capable of repetition, yet evading review." Cases which fall into this category are those in which the challenged conduct is of such short duration that it ceases before review is possible, *e.g., Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973) (pregnancy ending before review available), or in which there is a reasonable likelihood that the same complainant will be subject to the same conduct again, *e.g., Globe Newspapers v. Superior Court,* —— U.S. ——, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982) (state law excluding press from trials where juvenile is complaining witness for sex crime).

Dana contends that it is likely to be subject to another preliminary injunction prohibiting it from campaigning against the UAW. Although the Master Agreement required the parties to submit to binding arbitration before taking legal action, the UAW obtained the preliminary injunction, presently in issue, before arbitration. Dana maintains that nothing prevents the UAW from similarly breaching the Settlement Agreement which also requires binding arbitration before legal action. Because a situation identical to the present one may arise if the UAW breaches the Settlement Agreement, Dana invites this court to decide whether and how a court can enforce Dana's promise to refrain from anti-union comments during a union organizational campaign.

■ We decline to find a viable controversy because we find there is no reasonable expectation that the alleged violation, giving rise to this appeal, will recur. First, the combination of events which forced the UAW to seek legal action prior to arbitration is unusual and unlikely to arise again. Dana's breach of its neutrality promise commenced with Benny Hoyle's comments to Wix employees in April, 1980. The parties scheduled several dates for arbitration each of which Dana postponed. The UAW finally sought a temporary restraining order, just days before the union election at Wix, in a desperate attempt to salvage its organizational efforts. Had Dana made a more concerted effort to meet the arbitration dates, the UAW would not have needed the temporary restraining order or the preliminary injunction. If Dana acts in good faith in the future, as we assume it will, we do not anticipate that the present situation will arise again. Second, the situation would be "capable of repetition" if one assumes that the UAW intends to breach the Settlement Agreement. As a matter of law, we decline to base our decision to review this case on the presumption of bad faith conduct. For these reasons we find it

unlikely that Dana will again be ordered to refrain from anti-union comments pending binding arbitration of that issue. The case is moot because it is not "capable of repetition."

A careful analysis of the case from all factual and legal angles convinces us that all issues of the present case moot. This court is powerless to decide questions that cannot affect the rights of the litigants before it. Therefore, we remand the case to the district court to dismiss as moot. *Preiser v. Newkirk,* 442 U.S. at 403, 95 S.Ct. at 2335. We also order the district court to discharge the bond and return it to the UAW.

One final problem demands our attention. Our decision in the present case rests on a Settlement Agreement signed *one year* prior to our first decision and more than *eighteen months* prior to the present opinion. Neither party informed the court of the Settlement Agreement. For whatever reason, the parties were content to sit idly by and watch this enormous waste of judicial time and resources. We find such conduct inexcusable.

The case is remanded to the district court for proceedings consistent with this opinion.